UNITED STATES of America and Equal Employment Opportunity Commission, Plaintiffs,

v.

TRUCKING EMPLOYERS, INC., et al., Defendants.

Civ. A. No. 74–453.

United States District Court, District of Columbia.

Aug. 16, 1976.

Debra A. Millenson, Equal Employment Opportunity Commission, Washington, D. C., for plaintiff Equal Employment Opportunity Commission.

Lubomyr M. Jachnycky, U. S. Dept. of Justice, Washington, D. C., for plaintiff United States.

Charles P. O'Connor, Harry A. Rissetto, Morgan, Lewis & Bockius, Washington, D. C., for defendants.

Edward C. Kaminski, David H. Shaffer, Buckingham, Doolittle & Burroughs, Akron, Ohio, for absentee class members.

## MEMORANDUM AND ORDER

BRYANT, District Judge.

This matter is now before the Court on Plaintiffs' Motion To Compel Answers To Interrogatories Or, In The Alternative, To Show Cause Why These Interrogatories Should Not Be Answered, and the Memorandum Of Certain Absentee Defendants In Opposition To Plaintiff's Motion To Compel Answers To Interrogatories, and on defendants Smith's Transfer Corporation and Branch Motor Express's Motion To Clarify Functions Of The Defendant Class Representatives. This is a class action lawsuit in which the United States seeks relief under Title VII of the 1964 Civil Rights Act for discrimination in the trucking industry

against black and Spanish-surnamed persons involved in various phases of the industry. The Court has certified the suit as a Rule 23(b)(2) class action, in which the class is a defendant class consisting of all trucking companies meeting certain criteria. Seven such companies are among the named defendants and have been found by the Court to satisfy the representation requirements of Rule 23. Each member of the defendant class has been fully advised of the pendency and progress of the action, and of its right to appear personally herein.

On January 19, 1976 the Court by order permitted plaintiffs to serve their First Set of Interrogatories on certain absent members of the defendant class. Some of the common motor carriers served have responded to the interrogatories, while others have not. Plaintiffs now move that the Court order those absent defendant class members to answer the interrogatories or alternatively to show cause why they should not be required to do so. One group of Midwest carriers has filed the above-captioned opposition to the government's motion, contending that because they are not named parties to the action they may not be required to respond to any such discovery or be subject to any sanctions for failure to do so.

The Midwest carriers' argument is not without some merit. As Judge Carter points out in *Robertson v. National Basketball Association*, 67 F.R.D. 691, 699 (S.D. N.Y., 1975), the use of discovery devices against nonrepresentative class members raises a conflict between the competing interests of the class members in remaining passive and the need of the opposing party to gather information necessary to make its case. In *Robertson*, the defendant sought the information from members of a plaintiff class. Here, the information is sought by plaintiff from members of a defendant class. The Court does not believe the distinction to be significant in terms of the availability of discovery. Indeed, passivity is a value relevant chiefly to an absent plaintiff class member getting a "free ride" to a possible recovery, rather than to an absent defendant. Of course, there does seem to be an additional element of coercion present in requiring an absent defendant, who has not had the absent plaintiff's at least sometime opportunity to opt out of the class, to respond to discovery. This disparity is greatly mitigated however by the realization that (if the class certification is proper) the essential involuntariness of the absent defendant's position springs not from the class nature of the suit, but from that person's status as part of a *defendant* class, always an involuntary posture.

The evolving view, with which the Court agrees, seems to be that the court has the power under its authority to manage a class action and under Rule 23(d) to permit reasonable discovery by way of interrogatories of absent class members when the circumstances of the case justify such action. The most important relevant circumstances are that the party seeking the discovery must demonstrate its need for the discovery for purposes of trial of the issues common to the class, that the discovery not be undertaken with the purpose or effect of harassment of absent class members or of altering the membership of the opposing class, and that the interrogatories be restricted to information directly relevant to the issues to be tried by the Court with respect to the class action aspects of the case. See, *Brennan v. Midwestern United Life Insurance Co.*, 450 F.2d 999 (C.A.7, 1971), *cert. den.*, 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792; *Clark v. Universal Builders, Inc.*, 501 F.2d 324 (C.A.7, 1974), *cert. den.*, 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666; *Robertson v. National Basketball Association, supra; Gardner v. Awards Marketing Corp.*, 55 F.R.D. 460 (D.Utah, 1972); *Bisgeier v. Fotomat Corp.*, 62 F.R.D. 118 (N.D.Ill., 1973); *contra, Wainwright v. Kraftco Corp.*, 54 F.R.D. 532 (N.D.Ga., 1972); *Fischer v. Wolfinbarger*, 55 F.R.D. 129 (W.D.Ky., 1971). Discovery is not to be allowed as a matter of course, especially with a defendant class, but only when the Court is satisfied that the required showing has been made. In the instant case, the Court believes that plaintiffs have satisfied the relevant requirements and that the cir-

cumstances justify allowing the requested discovery of the absent class members. It is clear, first, that it is necessary for plaintiffs to obtain the information from absent class members, because the named defendants do not have the information. Given the nature of the issues in this case, only the class members are in a position to supply that information. Without the information, it would be all but impossible for plaintiffs to present their case in a trial of the common issues. Secondly, notwithstanding the allegations of the Midwest carriers, it does not appear to the Court that the interrogatories are being used for any improper purpose or are having any impermissible effect. Unlike the more usual instance in which discovery is sought by a corporate defendant against absent plaintiffs who are individual persons with small potential claims, and where such discovery might therefore stand as a barrier to the continued class membership of such individuals, thus reducing the size of the class opposed to the party seeking discovery, here discovery is sought of corporate (absent) defendants operating in interstate commerce. The dangers present in the usual instance are therefore greatly reduced. Moreover, while the Midwest carriers attempt to portray the conduct of the plaintiffs as harassment, the documentary record before the Court wholly fails to support any such reading. The fact that the service of these interrogatories occurred subsequent to the failure of these absent class members to join in participation in the monetary compensation procedure of the Partial Consent Decree entered into by a majority of the members of the defendant class is simply a consequence of the fact that plaintiffs could not know upon whom to serve the interrogatories until after all those who wanted to participate in the compensation procedure had been given an opportunity to do so. It cannot be contended that the plaintiffs used the interrogatories to coerce participation in the compensation procedure when the evidence offered by the carriers themselves shows that the interrogatories were not served until well after the expiration of the deadline set by plaintiffs for class members to elect to participate in that procedure.

■ After examining the interrogatories the Court has concluded that they request information directly relevant to the issues to be tried in the class action aspects of this case. The information requested, while not insubstantial, is not overly burdensome in view of the nature of the carriers' business, the complexity of the issues in the case, and the nature of the evidence that will be necessary to enable the Court to adjudicate the issues herein. In the Court's view, the information requested could not be significantly narrowed without making it largely unresponsive to the needs of the plaintiffs in preparing their case for trial.

■ Finally, the Midwest carriers complain, in their opposition to plaintiffs' motion to compel, that they are not receiving adequate representation on the part of the named carrier defendants. Those named defendants have also filed a motion asking the Court to clarify their functions as class representatives. The uncertainties and conflicts expressed by named and nonparty defendants reflect in large part the unusual nature of class actions in general and of defendant class actions in particular. Class actions are the only significant exception to the general rule that one is not bound by a judgment *in personam* in litigation to which he/she has not been made a party by service of process. See, *Supreme Tribe of Ben-Hur v. Cauble*, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921); *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Defendant class actions are even more peculiar, in that one does not even have the opportunity to opt out of the class often available to members of a plaintiff class, see generally 3B *Moore's Federal Practice* ¶ 23.55. Rule 23 recognizes the due process concomitants of this situation, and mandates that the interests of such involuntary absent defendants be protected by a determination by the court that the interests of named and nonparty defendants coincide sufficiently that the substan-

tive positions taken by the named defendants will protect the interests of the nonparty defendants. The court cannot certify a suit as a class action until such a determination has been made.

█ In the present case, the issue of representativeness was thoroughly briefed and considered by the Court; among those expressing a view on the question was the Midwest group of carriers involved herein. The Court found that the interests of the named carriers and the nonparty carriers coincided with respect to the issues in this case, and that the named defendants could be expected to take positions consistent with the interests of the nonparty carriers. As a result, the Court certified the defendant class. The Court has also directed that nonparty defendants be served with papers of general significance to the case at various times during the pendency of the case, to ensure that those nonparty defendants would have the opportunity to bring to the Court's attention any instance in which they felt their interests diverged from those of the named defendants. The Court will continue to do this, and specific provisions are included in today's order to that end.

█ The Midwest carriers however continue to protest that the representation of the named defendants of the interests of nonparty defendants is inadequate. Their complaints fall into three functional groups. First, they assert that despite repeated requests counsel for named defendants have refused to file various motions (i. e. motion to decertify the class; motion to stay discovery; motion to prohibit direct communication by plaintiffs with nonparty defendant carriers) on behalf of the nonparty defendants. Counsel for named defendants agree that they have declined to do so, feeling that in their judgment no reasons existed to file such motions on behalf of their own clients and that they had no obligation as involuntary class representatives to do so. From this the Midwest carriers conclude that antagonism exists between the named and nonparty defendants of a sort which makes the named defendants insufficiently representative to allow

the continuance of the suit as a class action. The Court believes that the Midwest carriers misconstrue the concept of representativeness in the context of a defendant class action. What is required is that the named parties represent the *substantive interests of all class members with respect to the issues in the suit.* If they are indeed representative, then in advocating their own interests with respect to the merits of the suit they will by reason of a coincidence of interest also be representing the interests of the nonparty defendants. Two points are important to note here: (1) the representativeness is on the issues in the suit, not on each and every procedural or subsidiary facet of the action, and (2) the only antagonism that is relevant to representation is antagonism of interest on the subject matter of the suit itself. See *Redmond v. Commerce Trust Co.,* 144 F.2d 140 (C.A.8, 1944); see also *Hansberry v. Lee, supra* ; cf. *Philadelphia Electric Co. v. Anaconda American Brass Co.,* 43 F.R.D. 452 (E.D.Pa., 1968); 3B *Moore's Federal Practice* ¶ 23.07[3]. Obviously, the only responsibility of counsel for named defendants is therefore to conscientiously represent their clients and to advise the Court in any instance in which it appears to them that the interests of their clients diverge from the interests of nonparty defendants. If any nonparty defendant wishes to alert the Court to any such instance, it has been and continues to be free to do so. Nonparty defendants have also been on notice since the commencement of the action that they may freely intervene in the case at any time they feel it would be advantageous to them to do so.

█ The Midwest carriers' second complaint as to the adequacy of representation seems to be that because of the disparity in size between the named defendants and some of the nonparty defendants the positions to be taken by the named defendants as to relief, if and when the case reaches that stage, may be inconsistent with the needs and capabilities of the smaller nonparty defendants. The Court believes that this problem will be avoided by the opportunity for comment on proposed relief that

the Court will afford all members of the class prior to the entry of any relief order.

■ The third reason cited by the Midwest carriers as to why representation is inadequate relates to the Partial Consent Decree heretofore entered in this case. This decree was negotiated by the plaintiffs and the named defendants, and was filed at the same time as the complaint which commenced this action. The Midwest carriers' main contention is that because the named defendants have signed this partial decree they now have no active dispute with plaintiffs and consequently cannot represent the interests of those carriers who have not signed the decree. The Court would first note that the actual negotiation of the decree is an indication that the named defendants do indeed represent the interests typical of those of nonparty defendants, in light of the fact that a large majority of those nonparty defendants have also now signed the decree. More importantly however, the decree does not end the controversy between plaintiffs and the parties to the decree. It is an incomplete document, at this point lacking certain indispensable provisions, such as those dealing with seniority issues. The adversary relationship between the named defendants and the plaintiffs remains therefore, and as long as that is the case the Court has no reason to expect that the degree of representativeness of the named defendants will become inadequate. Because of the due process necessity that the viewpoint of nonparty defendants who have not signed the decree be effectively represented, the Court will however continue to accept for filing any pleadings in which such carriers state that their own interest differs significantly from that of parties to the decree with respect to any issue material to this action. Moreover, if at any time in this litigation it appears that the interests of signers and non-signers of the decree do diverge materially, the Court will entertain motions to split the defendant class into subclasses, and will at that time of course determine the continued adequacy of representation as to each subclass. Finally, the Court is also considering the possibility of ordering the joinder of additional members of the defendant class as named parties to additionally represent the interest of absent defendants such as the Midwest carriers who have not signed the decree. The Court today invites comment on the possibility and the propriety of such an order.

Accordingly, it is by the Court this 16 day of August, 1976

ORDERED, that the Motion To Clarify Function Of The Defendant Class Representatives made by Smith's Transfer Corporation and Branch Motor Express be, and hereby is, granted, to the extent indicated herein; and

FURTHER ORDERED, that plaintiffs' Motion To Compel Answers To Interrogatories be, and hereby is, granted; and

FURTHER ORDERED, that those members of the defendant class, listed in Appendix A to plaintiffs' memorandum in support of the motion specified in the preceding paragraph, who have not answered or otherwise responded to Plaintiffs' First Set of Interrogatories, served on February 6, 1976, shall respond to those interrogatories within forty-five (45) days of the receipt of this order; and

FURTHER ORDERED, that plaintiffs shall serve a copy of this Memorandum and Order on each member of the defendant class who has not signed the Partial Consent Decree heretofore entered in this case; and

FURTHER ORDERED, that copies of any pleading of general significance to this action filed by any named party to the action shall hereafter be served by plaintiffs upon each nonparty defendant who has not signed the Partial Consent Decree heretofore entered in this case; and

FURTHER ORDERED, that plaintiffs shall submit to the Court and to each member of the defendant class specified in the preceding paragraph a list of members of the defendant class who are not parties to the Partial Consent Decree and who would be subject to the personal jurisdiction of this Court, as to whom venue would be

proper in this Court, and who plaintiffs consider representative of defendant class members not party to the Decree. Any interested person may comment, by filing within twenty-one (21) days of the receipt of such list a pleading denominated "Comment On Proposed Joinder Of Additional Representative Parties", on the propriety of an order pursuant to Rules 19 and 23 joining one or more such class members for purposes of assuring continued adequate representation (as discussed herein) as this action proceeds.

IT IS SO ORDERED.