**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2306-21

TOWNSHIP OF HOLMDEL
and THE TOWNSHIP
COMMITTEE OF THE
TOWNSHIP OF HOLMDEL,

     Plaintiffs-Respondents,

v.

MATTHEW O'DONNELL and
O'DONNELL MCCORD, PC,

     Defendants-Appellants.

_____

Argued June 22, 2022 – Decided June 30, 2022

Before Judges Fisher, Whipple and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3034-21.

Kevin J. Musiakiewicz argued the cause for appellants (Wilson, Elser, Moskowitz, Edelman & Dicker, LLP; Chamlin Uliano & Walsh; and Calcagni & Kanefsky LLP, attorneys;  Maxwell L. Billek, Michael P. Chipko, Charles J. Uliano and Kevin J. Musiakiewicz, on the briefs).

Jerry J. Dasti argued the cause for respondents (Dasti, Murphy, McGuckin, Ulary, Koutsouris & Connors, attorneys; Jerry J. Dasti, on the brief).

Matthew J. Platkin, Acting Attorney General, for amicus curiae State of New Jersey (Anthony A. Picione, Assistant Attorney General, of counsel and on the brief).

PER CURIAM

We granted leave to appeal to consider an interlocutory order that denied a stay of this civil action brought by plaintiffs against defendants Matthew O'Donnell (O'Donnell) and O'Donnell McCord (the law firm) based on allegations that defendants over-billed or fraudulently billed plaintiffs as their tax attorney. O'Donnell and his law firm pleaded guilty to certain crimes but have yet to be sentenced, and O'Donnell entered into an agreement to cooperate with the State in other prosecutions still pending. Defendants claim the continued prosecution of this civil action will interfere with the performance of the cooperation agreement and hamper the exercise of their constitutional rights. The trial judge weighed the relevant circumstances and denied relief. Finding no abuse of discretion, we affirm.

On June 29, 2018, defendant O'Donnell pleaded guilty to second-degree conspiracy to commit misconduct by a corporate official, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:21-9(c). In exchange for his plea, the State agreed to not prosecute

2

O'Donnell in connection with all other unlawful political contributions made by him and his conspirators. The plea agreement required O'Donnell to "fully cooperate" with the State by, among other things, making "truthful disclosure[s] of all information concerning any activities [d]efendant and others about which representatives of the [State] and other government agencies designated by the [State] may inquire." O'Donnell was also obligated to pay "full restitution to any and all victims who sustained a loss as a result of the scheme" to which he pleaded guilty.

In 2016, O'Donnell and the law firm entered into an agreement with plaintiffs to act as the municipality's special counsel for tax appeals and to be compensated at the rate of $150 an hour for services performed. The parties entered into similar yearly contracts in 2016, 2017, 2018, and 2019.

On learning in September 2021 of the criminal proceedings involving defendants, plaintiffs filed this action. They allege defendants breached their contracts by overbilling the municipality or billing for services never performed. Plaintiffs' complaint also alleges unjust enrichment, fraud, and seeks the piercing of the law firm's corporate veil. Plaintiffs seek compensatory and punitive damages. With the commencement of the action, plaintiffs filed a notice of lis pendens on O'Donnell's Sea Girt home, and also sought and obtained an

order that required defendants to show cause why a writ of attachment on defendant's home should not issue. Defendants opposed the application and, among other things, sought a stay of this action. The Attorney General also wrote to the trial court concerning these applications, advising of O'Donnell's obligation to cooperate with certain identified criminal prosecutions.[1] The judge denied defendants' motion for a stay, and we granted leave to appeal that ruling.

Whether to permit a stay of a civil action or discovery proceedings in a civil action because of a defendant's involvement in criminal proceedings is a matter left to the trial judge's "sound discretion," which requires an "assess[ment] and balanc[ing] [of] the nature and substantiality of the injustices claimed on either side." State v. Kobrin Sec., Inc., 111 N.J. 307, 314 (1988) (quoting Gordon v. Federal Deposit Ins. Corp., 427 F.2d 578, 580 (D.C. Cir. 1970)). In moving in the trial court, defendants sought not just a stay of discovery but a stay of the entire action "pending the outcome of [his] criminal

---

[1] Around the same time, O'Donnell and the State entered into an updated plea agreement, calling for him to plead guilty to second-degree conspiracy to commit misconduct by a corporate official, N.J.S.A. 2C:5-2, and N.J.S.A. 2C:21-9, and third-degree conspiracy to commit tampering with public records or information, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:28-7. This plea agreement included the same conditions required of O'Donnell as the prior agreement. O'Donnell also agreed to plead guilty on behalf of the law firm for false representation of a government contract, N.J.S.A. 2C:21-34(b).

4

proceedings." As noted above, defendants have entered guilty pleas but they have yet to be sentenced; their sentences, it is fair to assume, will likely be impacted by the extent or value of their cooperation with the State's prosecutions of others. To look deeper into how these civil proceedings may impact these criminal matters, we invited the Attorney General to participate in this appeal. In accepting our invitation, the Attorney General has argued only that allowing discovery to take place in this civil action, with the possible dissemination of information divulged beyond the boundaries of this case, could interfere with the selection of juries in the pending criminal matters.

In seeking reversal of the denial of their motion for a stay, defendants contend that the matter is one of "constitutional magnitude" that "threatens Fifth Amendment guarantees." We disagree. See Kobrin, 111 N.J. at 313 (recognizing, in quoting DeVita v. Sills, 422 F.2d 1172, 1178 (3d Cir. 1970), that "there is no constitutional inhibition that a defendant in a criminal case not 'be put to the difficult choice of having to assert the [Fifth Amendment] privilege in a related civil case'"). The matter instead turns on what constitutes the better (or fairer) way for the court to manage the civil case; as the Supreme Court explained:

> There may be cases where the requirement that a
> criminal defendant participate in a civil action, at peril

5

of being denied some portion of his worldly goods, violates concepts of elementary fairness in view of the defendant's position in an inter-related criminal prosecution. On the other hand, the fact that a man is indicted cannot give him a blank check to block all civil litigation on the same or related underlying subject matter. Justice is meted out in both civil and criminal litigation. The overall interest of the courts that justice be done may very well require that the compensation and remedy due a civil plaintiff should not be delayed (and possibly denied).

[Kobrin, 111 N.J. at 314 (quoting Gordon, 427 F.2d at 580).]

Normally, the clash between competing interests occurs when a party to the civil action is facing criminal prosecution for the conduct alleged in the civil action. That concern is not present here. Defendants have already pleaded guilty because of other conduct, so they have already incriminated themselves and can no longer claim a presumption of innocence. They have also failed or are unable to show that the guilty pleas they have entered involve conduct alleged by plaintiffs in this civil action,[2] or that they may face criminal prosecution arising

---

[2] In fact, the contrary seems to be true. To the extent the factual bases provided for the guilty pleas relate to defendants' seeking an attorney-client relationship with a municipality or in rendering legal services for a municipality, they do not mention plaintiffs.

A-2306-21

from the conduct alleged in this civil action,[3] or that relevant discovery that has or may be sought by plaintiffs will have any direct bearing on the other criminal prosecutions in which defendants have pledged their cooperation. And defendants have not argued in the trial court or in this appeal that in responding to any of the outstanding discovery requests in this civil action they plan on asserting a privilege against self-incrimination. In short, defendants have not shown there is any tension between plaintiffs' right to proceed in this civil action for damages arising from defendants' performance as tax counsel and defendants' concerns about the impact this civil litigation will have on their criminal proceedings.

The State also has not asserted that its ability to proceed in other criminal prosecutions in which defendants have agreed to cooperate will be impacted by the prosecution of this civil action except to express unspecified concerns about how a widespread dissemination of information in this case may present

---

[3] Indeed, the September 2021 plea agreement immunizes defendants from criminal prosecution, stating: "The State will not prosecute [d]efendant for any other heretofore disclosed activities in connection with any and all unlawful political contributions made by [d]efendant or his coconspirators on behalf of [d]efendant <u>or any heretofore disclosed activities in connection with his Firm's billing practices</u>" (emphasis added).

difficulties in the selection of juries in the pending criminal matters[4]; even if there is substance in this, the trial judge may issue protective orders to ameliorate any concerns that may actually arise in the future.

In the final analysis, this case presents yet another example of why, as our Supreme Court has said in similar circumstances, "civil proceedings should not be stayed except in the most unusual circumstances." Kobrin, 111 N.J. at 314; see also Walsh Sec. v. Cristo Prop. Mgmt., 7 F. Supp. 2d 523, 526 (D.N.J. 1998). In considering the interests of the parties, as well as the State's interests, we find little prejudice to defendants or the State arising from the trial judge's denial of a stay while the harm to plaintiffs, if there is merit in their claims, seems obvious if they are delayed in seeking damages for what they claim was defendants' fraud or overbilling.[5] The judge acted well within her discretion in denying defendants' motion for a stay.

---

[4] We share plaintiffs' view that there is a small likelihood that discovery in this Monmouth County civil action will have an impact on the selection of a jury in an Essex County criminal matter. But even if that became an issue, the trial judges in both this civil action and the other criminal matters are capable of selecting juries uninfluenced by such information.

[5] The trial judge denied plaintiffs' application for a writ of attachment and discharged the notice of lis pendens placed on O'Donnell's Sea Girt home, thus presenting further concerns for plaintiffs' eventual recovery of any damages that may be awarded, thereby amplifying the prejudice to plaintiffs if this action was to be stayed for the indefinite future.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2306-21