**Zayn HUSAYN, Petitioner,**

v.

**Robert GATES, Respondent.**

**Civil Action No. 08–1360 (RWR).**

United States District Court,
District of Columbia.

Nov. 28, 2008.

---

George Brent Mickum, IV, Amanda Lynn Edwards, Spriggs & Hollingsworth, Washington, DC, for Petitioner.

Scott Michael Marconda, Andrew I. Warden, Jean Lin, Terry Marcus Henry, U.S. Department of Justice, Washington, DC, for Respondent.

## MEMORANDUM OPINION AND ORDER

RICHARD W. ROBERTS, District Judge.

Guantánamo Bay detainee Zayn Husayn, also known as Abu Zubaydah, has petitioned for habeas corpus relief. He moves for reconsideration of the September 22, 2008 Memorandum Opinion, 577 F.Supp.2d 314 ("September Opinion") that denied his motion for disclosure of his medical records and related relief, arguing that the Opinion erroneously treated his motion as one seeking relief from his conditions of confinement which the court lacks jurisdiction to grant. Because petitioner's motion for disclosure in part legitimately sought important information in furtherance of Zubaydah's right to pursue habeas relief, his motion to reconsider will be granted in part and denied in part.

## BACKGROUND

Zubaydah has been a detainee at the United States Naval Base in Guantánamo

Bay, Cuba ("Guantánamo") since September of 2006. He complains that he has suffered from over 120 seizures since then, and that they are currently frequent and severe. According to him, they consist of excruciating pain in his head near the site of an old mortar injury that left him unable to think clearly or speak for an extended period. The seizures, he reports, occasionally make him dizzy, induce vomiting, or cause him to faint, after which he is unable to move, speak, or respond to instructions. He says that medications prescribed for him by Guantánamo physicians have rendered him incoherent, interfered with his ability to write and speak, and made him acutely psychotic. When guards revived him, he claims, he lashed out at them believing they were communists coming to attack him. He complained of suffering at his Combatant Status Review Tribunal hearing ("CSRT") the ill-effects of the seizures which had occurred as recently as the day before.

Zubaydah's counsel asked the respondent to disclose unredacted copies of Zubaydah's medical records since his arrival at Guantánamo in September 2006, as well as un-redacted copies of all guard and staff reports, logs, and notes regarding Zubaydah's seizures and seizure-related episodes at Guantánamo. Counsel also sought permission to meet with Zubaydah's treating physicians to discuss Zubaydah's condition, and for permission to provide Zubaydah's medical records to an independent physician of counsel's choosing. The government refused. (Pet'r's Emergency Mot. for Immediate Disclosure of Pet'r's Medical Records ("Pet'r's Emergency Mot.") at 1–7.) Zubaydah then moved for an order compelling the disclosures and permissions. He based his request on the court's power to "assure the integrity of the hearing" and his counsel's need to assess "whether and to what extent Petitioner's medical condition threatens to undermine his right to habeas," as well as the court's "inherent power and duty to take those steps that are necessary and proper to ensure the welfare of the parties." (Pet'r's Emergency Mot. at 7–9.) The respondent opposed the motion on jurisdictional grounds, arguing that granting Zubaydah's request would "intrude into" and "challenge ... petitioner's conditions of confinement," which was specifically precluded from judicial review by Section 7 of the Military Commissions Act of 2006 ("MCA"), codified at 28 U.S.C. § 2241(e)(2).[1] (Resp't's Opp'n to Pet'r's Emergency Mot. at 1.)[2]

1. The MCA provides in part:

   [N]o court, justice, or judge shall have jurisdiction to hear or consider any other action against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.

   28 U.S.C. § 2241(e)(2).

2. Respondent alternatively argued that the motion should be denied for Zubaydah's failure to meet the burden of showing a need for injunctive relief. Zubaydah's motion was not styled as a motion for a preliminary injunc-

tion, and it did not seek relief on the merits or the foreclosure of some element of relief for the respondent. (Pet'r's Reply to Resp't's Opp'n to Pet'r's Emergency Mot. for Immediate Disclosure of Pet'r's Medical Records at 1–2.) Had Zubaydah been seeking an order, say, altering the medical treatment he is receiving, or directing particular medical specialists to be flown in to attend to him, or transferring him to another medical facility, or halting his transfer from Guantánamo, respondent's argument might have been relevant. Zubaydah, however, sought no such things, and respondent recited standards applicable to remedies his motion did not seek. "An order by a federal court that relates only to the conduct or progress of litigation before that court ordinarily is not considered an

The September Opinion denied Zubaydah's motion. It concluded that Section 7 of the MCA deprived courts of jurisdiction to grant requests, such as Zubaydah's, for access to medical records, "as granting the relief would involve this Court in Petitioner's medical treatment at Guantánamo Bay and the decisions of officials at Guantánamo Bay relating to that medical treatment." *Husayn v. Gates (In re Guantánamo Bay Detainee Litigation)*, 577 F.Supp.2d 314, 316 (D.D.C. 2008). Zubaydah seeks reconsideration of the September Opinion, arguing that it erred in viewing the motion solely as a forbidden challenge to Zubaydah's detention, treatment, or conditions of confinement at Guantánamo Bay.

## DISCUSSION

▮ Under Rule 54(b) of the Federal Rules of Civil Procedure, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed.R.Civ.P. 54(b). Under Rule 54(b), a trial court may grant reconsideration "as justice requires." *Campbell v. U.S. Dep't of Justice*, 231 F.Supp.2d 1, 7 (D.D.C.2002). However, in order to promote finality, predictability and economy of judicial resources, "as a rule [a] court should be loathe to [revisit its own prior decisions] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Lederman v. United States*, 539 F.Supp.2d 1, 2 (D.D.C.2008) (quoting *Christianson v.*

injunction." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 279, 108

*Colt Indus. Operating Corp.*, 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)). Reconsideration may be warranted where there was a patent misunderstanding of the parties, where a decision was made that exceeded the issues presented, where a court failed to consider controlling law, or where a significant change in the law occurred after the decision was rendered. *Singh v. George Washington Univ.*, 383 F.Supp.2d 99, 101 (D.D.C.2005). The moving party has the burden of showing that reconsideration is warranted, and that some harm or injustice would result if reconsideration were to be denied. *In Def. of Animals v. Nat'l Institutes of Health*, 543 F.Supp.2d 70, 76 (D.D.C.2008).

▮ Detainees at Guantánamo Bay may seek the writ of habeas corpus, *Boumediene v. Bush*, ⎯ U.S. ⎯, 128 S.Ct. 2229, 2240, 171 L.Ed.2d 41 (2008), and have the right to be represented by counsel. *Hamdi v. Rumsfeld*, 542 U.S. 507, 539, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004). "There is no higher duty of a court, under our constitutional system, than a careful processing and adjudication of petitions for writs of habeas corpus." *Omar v. Harvey*, 514 F.Supp.2d 74, 78 (D.D.C.2007) (quoting *Harris v. Nelson*, 394 U.S. 286, 292, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969)). The Supreme Court has stated that "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is … entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Harris*, 394 U.S. at 292, 89 S.Ct. 1082. "[I]n order to properly represent [habeas] Petitioners, their counsel must

S.Ct. 1133, 99 L.Ed.2d 296 (1988).

have access to them, must be able to communicate with them, and must be made aware if their clients are in such fragile physical condition that their future ability to communicate is in imminent danger." *Al–Joudi v. Bush,* 406 F.Supp.2d 13, 21–22 (D.D.C.2005). "Unless Petitioners' counsel can have access to their clients, and know their true medical conditions, . . . it is obvious that their ability to present their claims to the Court will be irreparably compromised." *Id.* at 22. Zubaydah's counsel asserted that access to Zubaydah's medical information is necessary to make strategic determinations that are essential to legal representation, such as whether petitioner has the mental capacity necessary to assist in preparing and presenting his defense. (*See* Pet'r's Mot. for Recons. at 6.) Zubaydah's counsel sought access to Zubaydah's medical records "in order to assess whether and to what extent Petitioner's medical condition" affects his right to habeas, and to determine whether to challenge the legitimacy of Husayn's CSRT hearing in March 2007. (*See* Pet'r's Emergency Mot. at 7–9; Pet'r's Mot. for Recons. at 2–4.)

██ If Zubaydah's right to present his case with the assistance of counsel is to have any meaning, his counsel must be able to make the very assessments he seeks to make. Requesting copies of Zubaydah's medical records and staff records regarding Zubaydah's seizure-related episodes and being able to secure independent expert assessments of the data in the records is a legitimate and important effort to provide effective representation and present the court with appropriate information affecting the lawfulness of his detention.[3] It is not an action "to involve this Court in Petitioner's medical treatment at Guantánamo Bay and the decisions of officials at Guantánamo Bay relating to that medical treatment[,]" September Opinion, 577 F.Supp.2d at 316, which would be barred by the MCA.

Respondent cites *Al–Ghizzawi v. Bush,* No. 05–cv–2378 (JDB), 2008 WL 948337, at *1–7 (D.D.C. April 8, 2008), and *Al Odah v. United States,* 406 F.Supp.2d 37, 44 (D.D.C.2005), to support the claim that a petitioner's motion for access to medical records inherently relates to the detention, treatment, or conditions of confinement of a detainee. However, in both of those cases the petitioners sought medical records to challenge and intervene in the conditions of their confinement. The petitioner in *Al Odah* complained of improper medical care that caused him to suffer what he called potentially lethal symptoms, and thus sought an injunction requiring production of medical records incident to requested judicial oversight of his medical treatment. *Al Odah,* 406 F.Supp.2d at 39. The petitioner in *Al–Ghizzawi* initially sought a transfer to a Swiss clinic and an order requiring the government to perform specific medical tests. He then sought not merely his medical records, but an order "requiring the government to provide him with emergency medical treatment," which would have injected the court

---

**3.** Respondent's conjecture that petitioner's real purpose is to second-guess his medical care and impermissibly challenge his conditions of confinement (Resp't's Opp'n to Pet'r's Mot. for Recons. at 4) cannot foreclose these legitimate efforts. Notably, respondent has presented no facts to rebut most of Zubaydah's specific allegations regarding his compromised physical and mental condition. Indeed, a Guantánamo physician reportedly corroborated that Zubaydah has suffered psychological episodes and events. (Resp't's Opp'n to Pet'r's Emergency Mot. for Immediate Disclosure of Pet'r's Medical Records Ex. 1, Decl. of Andrew I. Warden at ¶¶ 4–6.) That is all the more reason that Zubaydah's counsel and an independent expert should have as full access to records of Zubaydah's Guantánamo medical history as due regard for national security interests will allow.

in overseeing the decision-making of Guantánamo officials regarding that petitioner's medical treatment. *Al–Ghizzawi*, 2008 WL 948337 at *4–5. Zubaydah's motion sought no such relief.[4]

Thus, Zubaydah's request is for the most part appropriate and not prohibited by the MCA, and the respondent will be ordered to provide access to the records Zubaydah seeks.

### CONCLUSION AND ORDER

Because the petitioner shows that justice requires reconsidering the September Opinion, it is hereby

ORDERED that Zubaydah's motion for reconsideration of the September Opinion be, and hereby is, GRANTED in part and DENIED in part. The request for permission to meet with Zubaydah's treating physicians is denied. The request that the respondent provide Zubaydah's counsel with copies of petitioner's medical records since his arrival at Guantánamo in September 2006, all copies of all guard and staff reports, logs, and notes regarding petitioner's seizures and seizure-related episodes at Guantánamo will be granted in part. The respondent shall file by December 23, 2008, a memorandum and proposed order addressing whether he will propose to make any redactions from the records to be produced and on what basis; how soon

production can be achieved and what the basis for the projection is; and any other proposed procedures to be followed under the Protective Order and incorporated into a subsequent order consistent with this opinion. Zubaydah shall have until January 9, 2009 to respond. The request for permission for Zubaydah's counsel to show Zubaydah's medical records to and consult with an independent physician will be granted.

---

4. Respondent's only response to the real relief Zubaydah seeks is to say that addressing the request for records would place an enormous burden on the Guantánamo medical staff. (Resp't's Opp'n to Pet'r's Emergency Mot. for Immediate Disclosure of Pet'r's Medical Records at 22; Resp't's Opp'n to Pet'r's Mot. for Recons. at 7.) This conclusory assertion is wholly unsubstantiated and must yield in the face of an unrebutted and partially corroborated showing of a potential mental and physical incapacity that could affect Zubaydah's ability to help prepare and present his case, and thus affect the integrity of the habeas proceeding. Respondent also suggests that

rather than seek the records he has requested now, Zubaydah's counsel would be better served by waiting until after the government files a factual return and responding to any evidence of Zubaydah's inability to assist in his defense by seeking a next friend to act on Zubaydah's behalf. (Resp't's Opp'n to Pet'r's Mot. for Recons. at 7.) That is a judgment entrusted to Zubaydah's counsel, not to the respondent. The one aspect of relief sought that is of an order beyond merely producing records—requiring Zubaydah's treating physicians to speak with his counsel—will be denied.